# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00509-CV

### In re General Motors Corporation, Chevrolet Motor Division and Austin Chevrolet, Inc. d/b/a Munday Chevrolet/Geo

### ORIGINAL PROCEEDING FROM TRAVIS COUNTY

## O P I N I O N

This original proceeding involves the duration of the district court's plenary power over a suit that was inadvertently dismissed for want of prosecution while the suit was abated in the district court. The suit had been abated to allow an administrative proceeding to take place to resolve certain issues that were predicates to the district court acquiring jurisdiction over all of the claims and issues in the suit. The suit was inadvertently dismissed in 2003 during the period of abatement and while the administrative proceeding was still pending. Over four years later, in 2007, the trial court vacated the inadvertent order of dismissal and reinstated the suit. Relators General Motors Corporation, Chevrolet Motor Division and Austin Chevrolet, Inc. d/b/a Munday Chevrolet/Geo[1] seek a writ of mandamus compelling the district court to vacate the 2007 order that vacated the district court's 2003 order of dismissal for want of prosecution, contending that

---

[1] Because we address relators in the context of the district court proceedings, we refer to them collectively as "Defendants."

the 2007 order attempting to vacate the previous dismissal is void because it was issued after the expiration of the district court's plenary power. We conditionally grant the writ.

**Factual and Procedural Background**

Respondent Landmark, a Chevrolet vehicle dealership, filed the underlying suit against GM and Munday in 1998, alleging that they defrauded Landmark of its right to protest Munday's 1993 dealership application, lobbied the legislature in bad faith, and discriminated against Landmark in the allocation of Chevrolet's "most profitable" vehicles.

The underlying dispute relates back to a 1993 administrative proceeding before the Texas Department of Transportation's Motor Vehicle Board.[2] *See Austin Chevrolet, Inc. v. Motor Vehicle Bd.*, 212 S.W.3d 425 (Tex. App.—Austin 2006, pet. denied). In that proceeding, Munday filed an application for a new franchised motor vehicle dealer's license, and Landmark filed a protest to the application. GM intervened on Munday's behalf, and after a pre-hearing conference and some discovery, the Board scheduled a hearing on the merits. Before the hearing on the merits, Landmark dismissed its protest, ostensibly because it had reached an agreement with GM regarding its concerns about the Chevrolet dealership that Munday proposed to open in Houston. Munday then obtained the license to operate its new Chevrolet dealership.

In 1997, Munday filed an application with the Board seeking to relocate his dealership from FM 1960 to a proposed site on IH-45, a distance of less than a mile. Landmark did not approve of this relocation. However, Landmark was not in a position to protest the relocation of Munday's

---

[2] The Motor Vehicle Board was abolished in 2005. *See* Act of May 30, 2005, 79th Leg., R.S., ch. 281, § 7.01, sec. 2301.002(2), (10), 2005 Tex. Gen. Laws 778, 839.

2

dealership because of an amendment to the Texas Motor Vehicle Commission Code (the "Code"), which provided that "the relocation of a dealership is not subject to protest by a franchised dealer . . . if the proposed relocation is not farther than one mile from the site from which the dealership is being relocated." *See* Act of May 22, 1997, 75th Leg., R.S., ch. 639, § 26, sec. 4.06(e)(1), 1997 Tex. Gen. Laws 2185, 2197, *repealed by* Act of May 22, 2001, 77th Leg., R.S., ch. 1421, § 13, 2001 Tex. Gen. Laws 4570, 5020 (current version at Tex. Occ. Code Ann. § 2301.652(c)(1) (West 2004)).

Landmark filed this lawsuit seeking damages for breach of a duty of good faith and fair dealing, violation of the Deceptive Trade Practices Act, fraud and conspiracy against GM, and for fraud and conspiracy against Munday. In its suit, Landmark claimed that it had been misled by Defendants into dismissing the protest of Munday's original application, that GM had lobbied the legislature to amend the Code in bad faith to Landmark's detriment, and that GM unreasonably discriminated against Landmark in the allocation of certain vehicles after Munday opened its Chevrolet dealership in Houston. Landmark's petition alleged specifically that its claims against GM (under the DTPA and for breach of a duty of good faith and fair dealing) were based on alleged violations of the Code. The fraud claim in the original petition is not based on a violation of the Code.

The district court entered an unopposed order of abatement of the suit in August 2001, referring two issues to the Board that the court and the parties concluded were fundamental to Landmark's claims and were within the "primary jurisdiction" of the Board:

3

(1) If Landmark had not withdrawn its protest of the license application at issue in *William F. Munday d/b/a Bill Munday Chevrolet/Geo, Applicant v. Landmark Chevrolet Corp., Protestant and General Motors Corporation, Intervenor*, before the Texas Department of Transportation, Division of Motor Transportation; Docket No. 93-094, under § 4.06(c) of the Texas Motor Vehicle Commission Code ("Code") would Landmark have obtained a final order denying the license application?

(2) Did GM violate Code § 5.02 by unreasonably discriminating between or among Landmark and Munday in the allocation of Suburbans and Tahoes, beginning with Munday's initial allocation in 1994 and extending through January of 1997?

On April 2, 2003, while the administrative proceeding before the Board was on-going, the district court inadvertently sent notice to the parties of its intent to dismiss the abated district court suit for want of prosecution. The notice that the case was subject to dismissal for want of prosecution ("DWOP") unless a motion to retain was filed was received by counsel for the Defendants. However, because of a failure of the DWOP system in the district clerk's office to note a change of address, counsel for Landmark did not receive the notice.[3] Consequently, Landmark

---

[3] There is no dispute that the dismissal of the case for want of prosecution was inadvertent on both the part of the district court and Landmark. A routine motion to retain would have prevented the dismissal, and the Defendants acknowledge that the motion would have been unopposed. However, such a routine motion will not be filed unless the affected litigant is aware that the DWOP process is happening. Due to no fault of their own, Landmark's lawyers were unaware that the DWOP process was occurring. Defendants' counsel, however, did receive the notice. They knew Landmark's lawyers had failed to respond, and acknowledged at oral argument that they discovered at the time of the original dismissal that the reason for the failure was that Landmark's notice had been sent to the wrong address. Four years of litigation between the parties in the administrative proceeding followed, including an appeal to this Court and a petition for review to the Texas Supreme Court, without any disclosure by the Defendants to Landmark, the Board, this Court, or the Texas Supreme Court that the underlying suit—for which the administrative proceeding was a predicate—had been dismissed. The Petitioners assert that they had no duty to reveal to anyone that the underlying case had been dismissed. While the point at which a litigant becomes obligated to disclose such a fact to an opposing party may be debatable, failing to disclose the reality of the procedural posture of the litigation to the tribunals in the process of hearing the dispute

4

did not respond to the DWOP notice or file a motion to retain. Without a motion to retain or any response from the parties, the routine DWOP process continued, and the court dismissed the case for want of prosecution on May 13, 2003. Landmark, being unaware that the case had been dismissed, did not challenge the order of dismissal by filing a motion to reinstate the case, a motion for new trial, any motion that would have extended the district court's plenary power, an appeal, or a bill of review.

Meanwhile, the administrative proceeding before the Board continued. The Board issued a final order in December 2004. GM and Munday sought judicial review of the Board's final order. This Court affirmed the Board's order in June 2006. *See Austin Chevrolet*, 212 S.W.3d at 439. The supreme court declined review, and this Court's mandate issued on March 27, 2007, bringing the administrative proceeding before the Board to conclusion.

Landmark filed a motion to lift the abatement of the district court suit on May 10, 2007, nearly four years after the district court dismissed the suit for want of prosecution. Some time after the filing of the motion to lift the abatement and before the hearing on the motion, Landmark discovered that the suit had been dismissed for want of prosecution in May 2003. At the hearing on

is another matter. The failure to disclose the actual procedural posture of the case to the tribunals considering the case—particularly in briefing to this Court discussing what would or would not happen when the (then nonexistent) district court case was unabated and litigated is a source of concern when tremendous resources are being expended by both the litigants and the judiciary to resolve what amounted to hypothetical questions. However, the propriety of the Defendants' tactical decision not to disclose the dismissal to Landmark or the various tribunals hearing the litigation and the effect of the Defendants' representations/omissions before those tribunals does not bear on the resolution of the jurisdictional issue before us. Whether the Defendants responded appropriately or inappropriately to their discovery of the mistake in the DWOP process does not impact the duration of the district court's plenary power to enter the 2007 order vacating the 2003 order of dismissal. This is true whether the 2003 dismissal was proper, improper, inadvertent, or deliberate.

5

the motion to lift the abatement, held on July 3, 2007, Landmark asserted that the 2003 order of dismissal was void because it was entered while the case was abated and while related issues over which the Board had exclusive jurisdiction were still pending before the Board. Agreeing with Landmark, on July 12, 2007, the district court lifted the abatement, found that its 2003 order of dismissal was "null and void," and vacated it. The district court expressly found that the suit had been "inadvertently included on a list of cases dismissed for want of prosecution."

Defendants seek a writ of mandamus to compel the district court to vacate its 2007 order vacating the 2003 order of dismissal. They contend that the 2003 order of dismissal was a final judgment and that the 2007 order is void because it was entered after the expiration of the district court's plenary power. Landmark contends that the 2003 order of dismissal may be vacated by the district court as void at any time because the district court lacked jurisdiction to dismiss the case for want of prosecution at a time that the Board had exclusive jurisdiction over claims in the suit and the litigation before the Board involving those claims was not final.

**Plenary Power of District Court**

If a case is dismissed for want of prosecution, a party seeking reinstatement must file a verified motion to reinstate within thirty days after the date on which the order of dismissal was signed. Tex. R. Civ. P. 165a(3); *In re Montemayor*, 2 S.W.3d 542, 545 (Tex. App.—San Antonio 1999, orig. proceeding). In the absence of a verified motion to reinstate, the trial court's plenary jurisdiction expires thirty days after the date on which the court signed the order of dismissal. *See* Tex. R. Civ. P. 165a(3); *Montemayor*, 2 S.W.3d at 545 (*citing McConnell v. May*, 800 S.W.2d 194, 194 (Tex. 1990) (orig. proceeding)). There is an exception to this rule if a party learns of the order of

6

dismissal more than twenty but less than ninety days after it was signed. *See* Tex. R. Civ. P. 306a(4); Tex. R. App. P. 4.2. In such an event, the thirty-day period begins running on the day the party receives actual notice or acquires actual knowledge of the order, but in no event does the thirty-day period begin to run more than ninety days after the order is signed. *In re Lynd Co.*, 195 S.W.3d 682, 685 n.2 (Tex. 2006) (citing *Levit v. Adams*, 850 S.W.2d 469, 470 (Tex. 1993)).[4] Thus, even if a party does not receive actual notice or acquire actual knowledge of the entry of an order dismissing a case for want of prosecution, the trial court's plenary power over the case ends no later than the 120th day after the order of dismissal is signed. *Id.* After the trial court loses jurisdiction over the case, a voidable order may be corrected through the ordinary appellate process or bill of review, but it is not subject to collateral attack. *See, e.g.*, *Reiss v. Reiss*, 118 S.W.3d 439, 443 (Tex. 2003); *Kendziorski v. Saunders*, 191 S.W.3d 395, 409 (Tex. App.—Austin 2006, no pet.).

The order of dismissal that was signed on May 13, 2003, is the starting point for determining when the district court's plenary power over the dismissed lawsuit expired. *See* Tex. R. Civ. P. 306a(1); *In re Bennett*, 960 S.W.2d 35, 38 (Tex. 1997). No motion to reinstate the suit, or any other motion that would have extended the district court's plenary power, was filed within thirty days of the date that the district court signed the 2003 order of dismissal.[5] *See* Tex. R. Civ. P. 165a(3), 329b. Thus, on June 12, 2003—the thirtieth day after the district court signed the order—the order of dismissal became final and the district court's plenary power expired. If

---

[4] This exception is inapplicable here because Landmark learned of the 2003 dismissal order more than ninety days after it was signed.

[5] Landmark was not in a position to make such filings because it was unaware of the dismissal.

the 2003 order of dismissal is a final order, the district court could not set aside the order except by bill of review because the court's plenary power expired. *See* Tex. R. Civ. P. 165a(3), 329b(d), (f). Landmark did not file a bill of review.[6] *See* Tex. R. Civ. P. 329b(f).

**Trial Court's Jurisdiction to Enter Order of Dismissal**

Landmark argues that it was unnecessary to attack the order of dismissal by bill of review because the 2003 order of dismissal is void for lack of subject-matter jurisdiction in the district court. According to Landmark, the district court had no jurisdictional power to dismiss the case for want of prosecution until the proceeding before the Board was final. Landmark argues that it would only be at that point that the district court acquired jurisdiction over all of the claims pending in the district court suit. *See Middleton v. Murff*, 689 S.W.2d 212, 213 (Tex. 1985) (noting exception to Tex. R. Civ. P. 329b(f)'s bill of review requirement for cases in which court rendering judgment had "no jurisdictional power" to do so); *see also Subaru v. David McDavid Nissan*, 84 S.W.3d 212, 227 (Tex. 2002) (concluding that trial court lacked jurisdiction to "try" damages attributed to violations of motor vehicle commission code); *In re Texas Mut. Ins. Co.*, 157 S.W.3d 75, 82 (Tex. App.—Austin 2004, orig. proceeding); *Metro Temps, Inc. v. Texas Workers' Comp. Ins. Facility*, 949 S.W.2d 534, 535 (Tex. App.—Austin 1997, no pet.). Landmark's theory is that since the 2003 order of dismissal was void, the district court's lawsuit was never actually dismissed and the suit is, in fact, still pending in district court. Under this view, the district court never lost

---

[6] The likely reason for deciding not to file a bill of review is the unfortunate fact that Landmark did not discover the erroneous order of dismissal until just over four years had passed from the date the order was entered.

plenary power over the suit because the order purporting to dispose of the case was of no effect. In such a situation, Landmark contends, it is sufficient to point out the voidness of the 2003 order of dismissal to the district court, have the district court acknowledge that the order is void, and continue litigating the suit as if the order of dismissal had not happened. This would mean that all void case-dispositive orders or judgments do not have to be appealed, attacked by bill of review, or collaterally attacked. The attack on the order could be accomplished by having the district court simply re-open or reinstate the original cause number at any time.

The Texas Supreme Court addressed the question of when and how void trial court orders may be attacked in *McEwen v. Harrison*, 345 S.W.2d 706 (Tex. 1961). *McEwen* involved a trial court's order vacating a default judgment for lack of service of process more than a year after the court's plenary power expired. In an opinion by Chief Justice Calvert, the supreme court recognized two types of void judgments: (1) those in which the trial court possessed the "jurisdictional power" to render the judgment despite the fact that there may have been an error or defect that made the judgment void, and (2) those in which the court did not even possess the "jurisdictional power" to hear the case and render judgment at all. 345 S.W.2d at 710. The court held that where the trial court had jurisdictional power to act, the judgment was subject to rule 329b and after plenary power expired could only be directly attacked by bill of review. *See id*. Only where a court did not have "jurisdictional power" to hear the case at all could a judgment by the court be directly attacked by other means. The *McEwen* court noted that if a county court rendered judgment in a suit for divorce or for title to property, these would be examples of judgments rendered by a court without the jurisdictional power to hear or render judgment in the case at all and

9

potentially subject to direct attack other than by appeal or bill of review. *See id.* at 709-10. Significantly, the supreme court also pointed out that the courts rendering such judgments would have no jurisdictional power to entertain or rule on a bill of review attacking the judgment. *See id.* at 710. Thus, where courts do not have the jurisdictional power to entertain the case at all, litigants would not have access to the remedy contemplated by rule 329b, and would necessarily need a different remedy. The supreme court went on to hold in *McEwen* that where a judgment is void due to lack of service or lack of valid service, such void judgments would be examples of judgments that are within the court's jurisdictional power to render and, consequently, that are subject to attack in the trial court after the expiration of the trial court's plenary power only by way of a bill of review due to the operation of rule 329b. *See id.*

This Court addressed a similar issue in *Newsom v. Ballinger I.S.D.* and concluded that a judgment can become final for the purposes of appeal even if it is void. 213 S.W.3d 375, 379 (Tex. App.—Austin 2006, no pet.) (citing *In re Vlasak*, 141 S.W.3d 233, 237-38 (Tex. App.—San Antonio 2004, orig. proceeding). The necessary corollary to finality, as noted by the this Court in *Newsom*, is that the district court's plenary power has a termination date under the rules of civil procedure regardless of whether a judgment that is final on its face is void. *Id.* We also pointed out that the Texas Supreme Court had expressly disapproved of the proposition that "if a judgment rendered by a trial court is void it may be set aside by that court at any time." *Middleton*, 689 S.W.2d 212, 213 (Tex. 1985). In addition, we observed:

> The very purpose of limiting a trial court's plenary power over a proceeding is to foreclose the possibility of a suit continuing indefinitely even though a final judgment has been obtained.

10

*Newsom*, 213 S.W.3d at 379. Only judgments that are both void and outside the jurisdictional power of the court are subject to being set aside by the trial court at any time.

This distinction between judgments within a court's "jurisdictional power" and those not within a court's "jurisdictional power" has been reaffirmed by the Texas Supreme Court on several occasions. *See Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex. 1990); *Middleton v. Murff*, 689 S.W.2d 212, 213 (Tex. 1985); *Deen v. Kirk*, 508 S.W.2d 70, 72 (Tex. 1974). Therefore, the question here becomes: "Did the trial court have the jurisdictional power to render the 2003 order of dismissal?" If so, the order became final—even if void or voidable—and is subject to the requirements of rule 329b limiting any direct attack to a bill of review.

We hold that the district court, albeit following standing DWOP procedures in a case that should not have been dismissed for want of prosecution and would not have been dismissed if proper notice had been sent, was within its jurisdictional power to enter the 2003 order of dismissal. As noted previously, the district court abated the case to give the Motor Vehicle Board the opportunity to decide certain issues. In its order of abatement, the district court made a finding that the Board had "primary jurisdiction" over the issues referred to it. This finding has not been challenged—although Landmark argues that, in fact, the Board had exclusive jurisdiction over these issues. Regardless of whether one views the Motor Vehicle Board's jurisdiction over the claims referred by the district to the Board as "primary jurisdiction" or "exclusive jurisdiction," the district court had the jurisdictional power to dismiss both those claims and the claims pending in the district court that were not referred to the Board. If the Board's jurisdiction was primary jurisdiction as found by the district court, the district court had concurrent jurisdictional power with the Board

11

with respect to those claims. *See Cash Am. Int'l Inc. v. Bennett*, 35 S.W.3d 12, 18 (Tex. 2000). If the Board's jurisdiction over the specified claims was exclusive, the district court had the jurisdictional power to dismiss any claims within the exclusive jurisdiction of the Board in favor of the Board as well as any other pending claims that were not within the jurisdiction of the Board, even if doing so mistakenly or erroneously. *See In re Entergy Corp.*, 142 S.W.3d 316, 321-22 (Tex. 2004) (citing *Subaru*, 84 S.W.3d at 221). Under either theory, the district court had the jurisdictional power to *dismiss* the claims, and its order of dismissal was subject to becoming final under the rules of civil procedure.

Since it had jurisdictional power to enter the 2003 order of dismissal, when the district court lost plenary power over this suit under the rules of civil procedure, it lost the power to alter its order of dismissal as a part of that lawsuit. When plenary power expired, the unappealed order of dismissal was final regardless of whether it was void, voidable, or valid. Such an order may be subject to direct attack by appeal, attack by a timely bill of review, or possibly collateral attack.[7] However, it is not subject to simply being re-examined, modified, or vacated by the trial court if the trial court were to be convinced—at some later date beyond its plenary power—that the order was, in fact, either void or voidable. Such orders and judgments are final for the purposes of the lawsuit in which they are entered, and may not be corrected, modified, or vacated by the trial court beyond

---

[7] A collateral attack is an attempt to avoid the binding force of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief against which the judgment currently stands as a bar. *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005). Only a void judgment may be collaterally attacked. *Id*. Here, Landmark sought to have the order vacated by the trial court that entered the order in the same proceeding in which the order was entered. This proceeding is not a collateral attack.

12

applicable deadlines for direct attack by appeal or bill of review. Consequently, we hold that the May 2003 order of dismissal was within the trial court's jurisdictional power and is subject to the requirements of rule 329b.

**The Abatement**

Landmark also argues that any action taken by the district court while the lawsuit was abated and the administrative proceeding ongoing was a legal nullity. This argument is a corollary to, but distinct from, Landmark's contention that the 2003 order of dismissal is void because the district court lacked subject-matter jurisdiction over the suit. This argument is based on the proposition that once a court enters an order of abatement, the court is limited in the actions it may take until the court un-abates or re-instates the case. A key aspect of this argument is the contention that certain actions by the court during an abatement—including dismissal for want of prosecution—are not only potentially error, an abuse of discretion, or otherwise reversible by direct attack, but are legal nullities in the sense that they are void much like an action by a court without jurisdiction to act. Landmark bases this argument on three court of appeals decisions involving trial court activities during periods of abatement in which the courts of appeals declared the actions in question to be "legal nullities" or void. *See Amrhein v. La Madeleine, Inc.*, 206 S.W.3d 173, 174-75 (Tex. App.—Dallas 2006, pet. denied) (concluding that trial court erred by entering summary judgment on deemed admissions when the requests for admission had been served while case was abated); *In re Kimball Hill Homes Tex., Inc.*, 969 S.W.2d 522, 527 (Tex. App.—Houston [14th Dist.] 1998, orig. proceeding) (holding that trial court abused its discretion in failing to abate case based on plaintiffs' failure to provide pre-suit notice required

13

by Residential Construction Liability Act and, therefore, any orders entered by court during statutorily-required abatement period were void)*; Lumbermens Mut. Cas. Co. v. Garza*, 777 S.W.2d 198, 199 (Tex. App.—Corpus Christi 1989, no pet.) (holding that trial court erred by entering order compelling production of documents based on discovery requests that were served while case was abated).

Defendants respond that the district court had jurisdictional power to dismiss the lawsuit and that the cases on which Landmark relies do not apply. We agree. In *Lumbermens*, the Corpus Christi Court of Appeals concluded that a workers' compensation carrier was under no obligation to respond to certain discovery requests because it had been served while the suit was abated for the appeal of the underlying compensation case. 777 S.W.2d at 198-99. The court held that the trial court abused its discretion by compelling the carrier's production of documents based on discovery requests propounded while the case was abated. The *Lumbermans* court did not find that the trial court's order was void. *Id*. at 199. It found only that "the discovery requests in th[e] case were a legal nullity." *Id*.

Unlike *Lumbermens*, *Kimball* did not involve a party's abrogation of an abatement order. *Kimball* addressed the trial court's noncompliance with the Residential Construction Liability Act (RCLA) by refusing to grant a statutorily required abatement. 969 S.W.2d at 524. Because the case was governed by the RCLA and because the plaintiffs failed to file a response to the motion to abate, the Fourteenth Court of Appeals in Houston concluded that the case should have been automatically abated. *Id*. at 527. Although the trial court in *Kimball* never entered an order of abatement, the Court added a broad statement attributed to *Lumbermens*, declaring that

14

"any action taken by the court or the parties during the [nonexistent] abatement is a legal nullity." *Id.* This statement is an inferential leap from the actual ruling in *Lumbermens*, which found only that the discovery requests promulgated by a party were a legal nullity (*i.e.* were of no compulsive effect), not an order or action of the court. *Compare id.*, *with Lumbermens*, 777 S.W.2d at 199.

The inference in *Kimball*—stating that any action by the court during an abatement is a nullity—is then quoted in *Amrhein*, in which the Dallas Court of Appeals reversed a trial court's summary judgment on deemed admissions because the admissions were served and the judgment entered while the case was abated for bankruptcy proceedings. *Amrhein*, 206 S.W.3d at 174-75; *see also Amrhein v. La Madeline, Inc.*, No. 05-00-00790-CV, 2001 Tex. App. LEXIS 4843, at *2 (Tex. App.—Dallas July 20, 2001, pet. denied) (not designated for publication) (clarifying that La Madeline served requests for admission subsequent to abatement).

None of these cases addresses the situation presented here. None of them involves a final order that is challenged after the expiration of the trial court's plenary power. None of the appellate courts in *Amrhein*, *Kimball*, or *Lumbermens* concluded that the trial courts lacked subject-matter jurisdiction. Moreover, neither *Amrhein*, *Kimball*, nor *Lumbermens* pertains to the hybrid claims resolution process for claims brought under the Code or concern an entity like the Board, which is powerless to award damages for any Code-based violations. *See Subaru*, 84 S.W.3d at 224 (noting that Board cannot award damages for Code-based violation but monetary redress is available from trial court).

Landmark's argument that any action by the district court during abatement is a nullity runs counter to a number of cases holding that a variety of actions by trial courts during

15

periods of abatement are permissible, including: (1) joinder of parties, *see De Checa v. Diagnostic Ctr. Hosp.*, 852 S.W.2d 935, 938 n.5 (Tex. 1993); (2) nonsuit and approval of agreed judgment, *see United Oil & Minerals, Inc. v. Costilla Energy, Inc.*, 1 S.W.3d 840, 846 (Tex. App.—Corpus Christi 1999, no pet.); and (3) authorization for parties to proceed by agreement on matters that are contrary to abatement order, *see Parker v. Three Rivers Flying Serv., Inc.*, 220 S.W.3d 160, 163 (Tex. App.—Eastland 2007, no pet.). Similarly, the dismissal of a claimant's case for want of prosecution during a bankruptcy stay has been affirmed, without any question of the court's power to act. *Montgomery Ward & Co. v. Denton County Appraisal Dist.*, 13 S.W.3d 828, 829-30 (Tex. App.—Fort Worth 2000, pet. denied).

**Order of Dismissal Not Nullity Per Se**

Although we agree with the results in *Kimball* (failing to enter an abatement required by the RCLA was an abuse of discretion) and *Amrhein* (entering a summary judgment based on deemed admissions that were served during a bankruptcy stay was error), we disagree with Landmark's interpretation of these cases to mean that *any* action by the trial court during an abatement is a nullity per se. While a case is abated, certain action by the parties—such as propounding discovery requests or setting hearings—may be ineffective. It is also possible that certain action by the trial court during the period of an abatement might constitute error or an abuse of discretion that is subject to review or reversal. However, abatement does not nullify every subsequent action by the parties or the court. *See De Checa*, 852 S.W.2d at 938 n.5; *Parker*, 220 S.W.3d at 163; *Costilla Energy*, 1 S.W.3d at 846; *see also Montgomery Ward & Co.*, 13 S.W.3d at 829-30 (affirming trial court's dismissal of case for want of prosecution during bankruptcy stay).

Nor does abatement, by itself, deprive the court of its power to act. Whether an act by the court during abatement is error is a different question.

The trial court was prevented from adjudicating Landmark's damage claims, not because the case was abated, but because of the Board's right to make initial findings with respect to Code-based allegations. The Texas Supreme Court has recognized a hybrid claims-resolution process for Code-based violations that gives the Board the exclusive right to decide issues or claims that implicate the Code but reserves to the trial court any adjudication of damages based on the violations found by the Board. *Subaru*, 84 S.W.3d at 224. Thus, under the hybrid-claims resolution process explained in *Subaru*, until Landmark obtained final findings on the Code-based issues that were referred to the Board, the district court could not try the damages attributable to the Code-based claims. *See id.* at 227.

Moreover, until Landmark exhausted its administrative remedies, the district court lacked the ability to adjudicate any of Landmark's claims, even though one of them—the fraud claim—was pleaded only as a common-law tort. Although common-law torts are not within the Board's exclusive jurisdiction, resolution of the two issues referred to the Board may have determined an essential element of the fraud claim: whether Landmark sustained an injury as a result of the Defendants' alleged representations. *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 211 (Tex. 2002) (stating six elements of action for fraud: "(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the

17

party acted in reliance on the representation; and (6) the party thereby suffered injury" (*quoting In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001))).

When a party has some claims that are required to be presented to an administrative agency along with additional claims that the agency has no authority to adjudicate, and when the determination of those additional claims depends partly on the resolution of an issue that the agency does have authority to adjudicate, the district court lacks jurisdiction to consider such additional claims until administrative remedies have been exhausted for the claims that the agency has authority to adjudicate. *In re Texas Mut. Ins. Co.*, 157 S.W.3d at 82; *Metro Temps, Inc.*, 949 S.W.2d at 535. Thus, because the Board's findings on the referred issues may also be determinative of whether Landmark can maintain its claim of fraud, the district court lacked jurisdiction to adjudicate that common-law claim until Landmark exhausted its administrative remedies.

However, the fact that the district court lacked jurisdiction to adjudicate Landmark's claims until action had been taken by the Board does not compel the conclusion that the district court's order of dismissal is void. As the supreme court explained in *Subaru*, when the trial court lacks subject-matter jurisdiction because an agency has exclusive jurisdiction over certain claims, the trial court should dismiss those claims without prejudice. *Subaru*, 84 S.W.3d at 227. If the impediment to the trial court's jurisdiction over certain Code-based claims can be cured by awaiting final determination of matters that are within the administrative agency's exclusive jurisdiction, the claims may be abated. *Id*. at 228. Accordingly, even when the trial court lacks subject-matter jurisdiction to adjudicate certain claims that are within the administrative agency's exclusive jurisdiction, the court still has the power to either abate or dismiss those claims. *See id.*

18

at 227-28; *see also Houston Mun. Employees Pension Sys. v. Ferrell*, 248 S.W.3d 151, 158 (Tex. 2007) ("Courts always have jurisdiction to determine their own jurisdiction."). The decision to abate or dismiss in this situation was within the district court's discretion. The district court did not divest itself of this discretion by entering the order of abatement. The district court retained the power to dismiss the claims—even to dismiss them inadvertently.

Landmark's argument, that because the district court lacked subject-matter jurisdiction to adjudicate Landmark's Code-based claims, the district court order of dismissal is void, runs counter to the established rule that a court has the power to determine its own jurisdiction and to take the appropriate action of dismissing claims over which it does not have jurisdiction. *See Royal Indep. Sch. Dist. v. Ragsdale*, 273 S.W.3d 759, 763 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Landmark's view would mean that every order of dismissal entered by a court without subject-matter jurisdiction over the claims in the case is void. Such orders of dismissal are not, of course, void. *See State v. Morales*, 869 S.W.2d 941, 949 (Tex. 1994) ("When a court lacks jurisdiction, its only legitimate choice is to dismiss."). Courts must and do have the power to dismiss lawsuits even when—particularly when—they lack jurisdiction over the subject matter of the suit. The issue in this case is, "Does the district court somehow divest itself of this power by entering an order of abatement rather than an order of dismissal?" If the court has the power to reconsider the abatement and reinstate the case, then the court must also have the power to reconsider the abatement and dismiss the case. This is true even though the court does not have the power to adjudicate the claims in the case. Once again, a court's action in dismissing a case for want of prosecution may or may not be error, but it is not a void act or a nullity simply because the case has been abated

19

by the court. The court retains the power to dismiss claims over which it does not have jurisdiction and cases that it believes—however erroneously or inadvertently—have not been prosecuted with sufficient diligence. When the litigants believe the court has taken such an action inadvertently or improvidently, the law requires the litigants to take some action to complain about this within certain time limitations. These time limitations are jurisdictional. The fact that a party may fail to act within the time constraints due to no real fault of their own does not alter the jurisdictional analysis.

**Trial Court's Power to Dismiss**

We are unpersuaded by Landmark's argument that the district court had the power to dismiss Landmark's claims for lack of jurisdiction, but lacked power to dismiss them for want of prosecution. Every court has power, in the absence of statutory prohibition, to dismiss a suit for want of prosecution. *Bevil v. Johnson*, 307 S.W.2d 85, 87 (Tex. 1957) (quoting *First Nat'l Bank v. Fox*, 39 S.W.2d 1085, 1086 (Tex. 1931)). A court's power to dismiss for want of prosecution arises from two sources: (1) rule 165a of the Texas Rules of Civil Procedure, and (2) the court's inherent power. *Villarreal v. San Antonio Truck & Equip.*, 994 S.W.2d 628, 630 (Tex. 1999). A trial court may dismiss under rule 165a when any party seeking affirmative relief fails to appear for any hearing or trial of which the party had notice or when a case is not disposed within the time standards promulgated by the supreme court. Tex. R. Civ. P. 165a(1), (2). Additionally, common law vests the trial court with inherent power, independent of the rules of procedure, to move its docket by dismissing cases that are not prosecuted with due diligence. *Villarreal*, 994 S.W.2d at 630; *Rizk v. Mayad*, 603 S.W.2d 773, 776 (Tex. 1980).

20

The district court's power to enter the order of dismissal in this case does not conflict with *Subaru* because dismissal is one of the limited actions that the court may take when a claimant's failure to exhaust administrative remedies deprives the court of subject-matter jurisdiction. *See Subaru*, 84 S.W.3d at 227-28. While the dismissal terminated the suit, it did not prejudice Landmark's right to re-file after it exhausted its administrative remedies. Furthermore, it does not conflict with the purpose of the exhaustion of administrative remedies requirement, which is to ensure that decisions on matters within the exclusive jurisdiction of the designated authority are made by that designated authority. *See University of Tex. Sw. Med. Ctr. v. Loutzenhiser*, 140 S.W.3d 351, 361-62 (Tex. 2004). The challenged order of dismissal did not rely on the resolution of any issue that the Board had exclusive authority to adjudicate. *Cf. Metro Temps*, 949 S.W.2d at 535.

The dismissal, entered before the Board had completed its fact finding, is analogous to the dismissal of a suit for want of prosecution by a state district court while liability issues are pending in federal court. In *Freeport Operators, Inc. v. Home Insurance Co.*, Freeport Operators challenged the dismissal of its declaratory judgment action, which sought a determination of Home Insurance's liability under its policy for damages related to a marine collision. 666 S.W.2d 566, 567 (Tex. App.—Houston [14th Dist.] 1984, no writ). Freeport Operators had not received prior notice of the dismissal, but later received notification by mail. *Id*. Home Insurance defended the court's dismissal, asserting that the case failed to present a justiciable controversy because it was dependent on the issue of liability that was still unresolved in the federal lawsuits. *Id*.

Affirming the dismissal of the suit, the court stated that a determination of Home Insurance's liability under its policy for damages on an unlitigated, contingent claim was not a

21

justiciable question because the cases involving liability from the marine collision had not been finally decided in federal court. *Id.* at 568 (citing *Ruth v. Imperial Ins. Co.*, 579 S.W.2d 523, 525 (Tex. Civ. App.—Houston [14th Dist.] 1979, no writ)). The court also noted that the dismissal did not prejudice Freeport Operators with regard to refiling:

> It is clear that where there is no mature issue for litigation the trial court lacks jurisdiction. It logically follows that a dismissal for want of prosecution by the trial court of a suit, over which it lacks jurisdiction, cannot operate as a bar to that suit in another court, where and when jurisdiction properly exists.

*Id.* at 568. Here, similarly, Landmark asserts that the district court dismissed a suit with claims that the court lacked jurisdiction to adjudicate while the Board proceedings were pending. However, it does not follow that the district court lacked power to dismiss the case for want of prosecution merely because it could not yet adjudicate the Code-based damages claims. Nor did the order of dismissal bar Landmark from proceeding when the jurisdictional impediment was removed.

Applying the foregoing authorities to the allegations in Landmark's petition, we conclude that the district court had the power to dismiss Landmark's suit for want of prosecution, irrespective of whether the dismissal order was inadvertent or erroneous.

**Presumption of Validity of Order of Dismissal**

A properly executed order of dismissal is a judgment. *Stewart v. USA Custom Paint & Body Shop, Inc.*, 870 S.W.2d 18, 20 (Tex. 1994). Even if this case is viewed as a sort of collateral attack on the 2003 dismissal order, collateral attacks on final judgments are generally disallowed because it is the policy of the law to give finality to the judgments of the courts.

22

*Browning v. Prostock*, 165 S.W.3d 336, 345 (Tex. 2005). In a collateral attack, the judgment that is assailed is presumed valid. *Stewart*, 870 S.W.2d at 20. The judgment's recitations control over the rest of the record, and extrinsic evidence cannot be used to establish a lack of jurisdiction. *Narvaez*, 127 S.W.3d at 317; *Shackelford v. Barton*, 156 S.W.3d 604, 606 (Tex. App.—Tyler 2004, pet. denied). Moreover, "[w]hen recitations in a judgment are insufficient to affirmatively show the court's jurisdiction, a presumption in favor of jurisdiction prevails so long as the recitations do not affirmatively show a lack of jurisdiction." *Foreness v. Hexamer*, 971 S.W.2d 525, 531 (Tex. App.—Dallas 1997, pet. denied) (holding that party making collateral attack had burden of showing from four corners of judgment that court did not have subject-matter jurisdiction to issue order); *Huffstutlar v. Koons*, 789 S.W.2d 707, 710 (Tex. App.—Dallas 1990, no writ).

In this case, the recitations in the May 13, 2003 order of dismissal do not affirmatively show that the district court lacked jurisdiction to enter the dismissal. Thus, the presumption in favor of the district court's jurisdiction prevails. *See Foreness*, 971 S.W.2d at 531; *see also Subaru*, 84 S.W.3d at 219 (stating presumption in favor of subject-matter jurisdiction of Texas courts of general jurisdiction).

**Court's Order Vacating Dismissal Order Is Void**

Because the 2003 order of dismissal of Landmark's claims was not void, it was not subject to being vacated by the district court after expiration of the court's plenary power. *See* Tex. R. Civ. P. 329b(f); *Universal Underwriters Ins. Co. v. Ferguson*, 471 S.W.2d 28, 30 (Tex. 1971) (discussing void nunc pro tunc order); *Love v. State Bank & Trust Co.*, 90 S.W.2d 819, 821 (Tex. 1936). The 2007 order at issue here resembles the order in *Love*, which reinstated a case

after the expiration of the district court's plenary power because the case had been "inadvertently and through mistake included by the court upon a list of cases to be dismissed for want of prosecution." 90 S.W.2d at 821. The Court stated:

> If it be conceded that this [inadvertent dismissal] were true, nevertheless the situation presented a typical case for bill of review, which is designed to furnish relief against judgments entered as a result of fraud, accident or mistake. The most that can be said in favor of defendant in error is that a judgment had been entered against him by mistake. A bill of review was undoubtedly the proper remedy, as the question of whether or not such judgment was the result of a mistake should have been determined by proof, after notice, and should not rest solely upon the recital contained in a subsequent order of the court.

*Id*. Here, as in *Love*, the district court's finding concerning the reason for the issuance of the notice of dismissal was not based on any evidence presented to the court, and the order attempting to vacate the prior dismissal was entered after the court lost plenary power to do so.

The 2007 order was entered after the expiration of the district court's plenary power and purports to vacate a final order entered over four years earlier: "It is therefore ORDERED that the Order of Dismissal of May 13, 2003, insofar as it dismisses this case for want of prosecution is VACATED." *See* Tex. R. Civ. P. 165a(3), 329b(f). Mandamus relief is proper when a trial court issues an order after the expiration of its plenary power. *In re Brookshire Grocery Co.*, 250 S.W.3d 66, 68 (Tex. 2008) (orig. proceeding); *In re Southwestern Bell Tel. Co.*, 35 S.W.3d 602, 605 (Tex. 2000) (orig. proceeding) (holding that orders issued after expiration of trial court's plenary power are void and constitute abuse of discretion); *see also Estate of Howley v. Haberman*, 878 S.W.2d 139, 140 (Tex. 1994) (per curiam) (concluding that mandamus relief is appropriate

when trial court erroneously reinstates case after expiration of court's plenary jurisdiction). We conclude that on July 12, 2007, the district court lacked jurisdiction to vacate its final order of dismissal entered on May 13, 2003, and that the 2007 order is void.

**Conclusion**

We conditionally grant relators' petition for writ of mandamus and direct the district court to vacate its July 12, 2007 "Order Vacating Order of Dismissal." The writ will issue only if the district court does not comply with this opinion. *See* Tex. R. App. P. 52.8.

G. Alan Waldrop, Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Filed: August 28, 2009

25